**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Magna Legal Services, | No. CV-13-00802-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona *ex rel.* Board of Certified Reporters, | |
| Defendant. | |

Before the Court is Defendant's Motion to Dismiss Amended Complaint (Doc. 18), and Plaintiff's Response.  Defendant's Reply was due by August 15, 2013, but no Reply was filed.  Defendant moves to dismiss the Amended Complaint for lack of subject matter jurisdiction, or, in the alternative, to dismiss Count I for failure to state a claim for which relief can be granted.  For the following reasons, Defendant's Motion will be denied.

I.     **Background**

These facts are taken from Plaintiff's Amended Complaint, and are assumed true for the purposes of this Motion.  Plaintiff Magna Legal Services (Magna) provides court reporting services to clients throughout the country, operating out of their central office in Philadelphia, Pennsylvania.  Because of the national scope of their business, Magna endeavors to enter into multi-case contracts with its clients.  Through those contracts, clients that are regularly involved in legal proceedings are able to negotiate lower rates for legal services, including court reporting, in exchange for retaining Magna to perform legal services for all of the client's matters.  The result is that Magna is able to provide

clients with court reporting services at a discount of up to 30%. In addition, Magna is as able to save its clients' money by having its reporters transmit a draft transcript to Magna's central office in Philadelphia after a proceeding to allow the staff there to print, copy, sign, and assemble transcripts and exhibits. Performing these back-end services in the central office allows Magna to process transcripts more efficiently and reduces delivery time and costs for clients.

The Board of Certified Reporters (the Board) is the state agency responsible for the state's certification of court reporters, created by A.R.S. § 32-4004. The State of Arizona (the State) has consented to be sued on behalf of the Board and its members, and represents the Board here. The Board is charged with the investigation, prosecution, adjudication, and disciplining of court reporters for violations of laws and regulations governing court reporters. A.R.S. § 32-4006. The Board is also responsible for making suggestions to the Arizona Supreme Court regarding rules, policies, and procedures for certifying court reporters. A.R.S. § 32-4005(B). No court reporter may report any legal proceeding in Arizona unless the reporter is certified by the Board. A.R.S. § 32-4003(a).

In February 2011, the Arizona Supreme Court adopted a revised set of rules governing the certification of court reporters in Arizona Code of Judicial Administration § 7-206 (the Regulations). The Regulations adopted a new series of rules for court reporters in Arizona that imposed restrictions on the way that court reporters could structure contracts for their services. The most salient rules for this Motion are found in § 7-206(J)(1), titled "Code of Conduct: Ethics." That section of the Regulations prohibits certified reporters from entering into any contract that requires them to:

> Relinquish control of a transcript in a manner that prevents the reporter from monitoring, overseeing, and reviewing the preparation, production, and distribution of the transcript before it is delivered to the custodial attorney, § 7-206(J)(1)(g)(1);
>
> Relinquish control in a manner that prevents the reporter's inspection and copying of records of charges, invoicing, and billing to the parties to an action, § 7-206(J)(1)(g)(2);
>
> Provide special financing terms or other services that are not offered at the same time, on the same terms, to all other parties to the litigation, § 7-206(J)(1)(g)(3);

Give any economic or other advantage to any party or its attorney, representative, agent, or insurer, § 7-206(J)(1)(g)(4); and

Perform court reporting services (expressly or impliedly) in any other proceeding or case at a specific rate of compensation or compels, guarantees, regulates, or controls the use of court reporting services in other cases, § 7-206(J)(1)(g)(5).

The Regulations also prohibit a certified reporter from taking a deposition if the reporter is:

A relative, employee, or attorney of someone with financial interest in the action . . ., § 7-206(J)(1)(h)(4);

An 'employee' includes a person who has a continuing contractual relationship, express or implied, with a person or entity interested in the outcome of the litigation, including anyone who may have ultimate responsibility for payment to provide reporting or other court services, and a person who is employed part-time or full-time under contract or otherwise by a person who has a contractual relationship with a party to provide reporting or other court services. § 7-206(J)(1)(h)(5)

The Regulations "may not be waived by disclosure, agreement, stipulation, or otherwise." § 7-206(J)(1)(j).

The Regulations allegedly have the effect of preventing court reporters in Arizona from entering into multi-case contracts with clients. In addition, the Regulations prevent court reporters in Arizona from contracting to provide services for Magna in a case in which Magna has a multi-case contract with one of the parties. In order to contract with Magna, then, Arizona court reporters in practice demand certifications from Magna that Magna has no multi-case contract or agreement with any party to the proceeding. To avoid violating the Regulations, Magna does not perform under its multi-case contracts in connection with any proceeding based in Arizona.

Arizona court reporters are also prohibited by the Regulations from sending draft transcripts out of Arizona to Magna for the back-end services that Magna provides out of its central office. Because Arizona court reporters are required to personally monitor the preparation, production, and distribution of the transcript, the Arizona reporter cannot send a transcript that has not been finalized to Magna for processing. For the purposes of this lawsuit, then, the relevant effect of the Regulations are that they prevent national

court reporting service providers like Magna from providing clients preferred pricing under a multi-case contract in Arizona and from performing post-proceeding processing from a central location for proceedings in Arizona.

## II.     Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant the State of Arizona *ex rel.* the Board of Certified Reporters (the State) first contends that Magna lacks Article III standing such that its claims should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### A.     Legal Standard

The Court must analyze the jurisdictional question of standing at the outset because it "precedes, and does not require, analysis of the merits" of a case. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citing *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n. 10 (9th Cir. 2008)).  In this case, the State contends that Magna fails to meet the Article III requirement that it have standing to invoke the power of the federal court.  The doctrine of standing requires that a "plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal court jurisdiction."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation and internal quotation marks omitted).

Because Magna is invoking federal jurisdiction in this case, it has the burden of establishing all of the elements of standing.  *Defenders of Wildlife*, 504 U.S. at 561.  In order to do so, Magna must show:

> (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Defenders of Wildlife*, 504 U.S. at 560-61.)).  Magna has the burden of establishing all of these elements for each type of relief it seeks.  *Summers*, 555 U.S. at 493.

1   A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) may either be

2   facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

3   The State's Motion is a facial attack because it "asserts that the allegations contained in

4   the complaint are insufficient on their face to invoke federal jurisdiction."  *Id*.  When

5   evaluating such a motion to dismiss for lack of standing, "courts must accept as true all

6   material allegations of the complaint and must construe the complaint in favor of the

7   complaining party."  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Therefore, if Magna's

8   Amended Complaint contains factual allegations sufficient to establish each of the

9   required elements of standing, it has met its burden.

10   **B.    Analysis**

11   Magna has alleged that the Regulations have caused Magna to lose potential

12   clients and to lose opportunities for additional engagements with existing clients.  (Doc.

13   15 ¶¶ 107, 124, 145).  These are general allegations of injury, and Magna repeats them

14   for each of its claims.  However, "[a]t the pleading stage, general factual allegations of

15   injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we

16   presume that general allegations embrace those specific facts that are necessary to

17   support the claim."  *Maya*, 658 F.3d at 1068 (citing *Lujan v. Defenders of Wildlife*, 504

18   U.S. 555, 561 (1992) (internal quotation marks omitted)).  The State's Motion simply

19   does not does not address those alleged injuries, and the State filed no Reply.  Instead, the

20   State focuses on Magna's allegation that it cannot perform under its multi-case contracts,

21   and contends that is not ripe because the State has not yet sought to enforce the

22   Regulations against Magna.  The State also argues that Magna does not have standing

23   because the Regulations are only applicable to Arizona court reporters, and that Magna

24   cannot assert the interests of third parties.  These arguments do not address the existing

25   injuries Magna has alleged that it has already suffered, in terms of lost clients and lost

26   engagements with existing clients.  Since those injuries are, on their own, sufficient to

27   establish standing, the Court need not address the State's other arguments.

28   Further, in this case, Magna has alleged more specific facts that support these

general allegations.  (Doc. 15 ¶¶ 43, 49-51, 55.)  In short, Magna has alleged that it has already suffered an injury from the implementation of the Regulations and will continue to do so in the future.  Those allegations are sufficient to satisfy the first requirement for standing.  To satisfy the remaining two requirements, Magna must show that the injury it has alleged is fairly traceable to the Regulations, and that it is likely that the Court could provide effective relief.

An injury is fairly traceable to a defendant's conduct if a plaintiff can "establish a 'line of causation' between defendants' actions and [the plaintiff's] alleged harm that is more than 'attenuated.'"  *Maya*, 658 F.3d at 1070 (citing *Allen v. Wright*, 468 U.S. 737, 757 (1984).  That standard is a lighter burden than the proximate cause standard; for this requirement a "causal chain does not fail simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausible.'"  *Id.* (citing *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002).  Magna has alleged that the Regulations, and the threat of the State's enforcement thereof, have caused Arizona court reporters to refuse to abide to Magna's multi-state contracts and to demand certification that Magna has no such contract before providing court reporting services.  (Doc. 15 ¶ 48).  Magna has also alleged that the Regulations have caused certain clients to refuse to enter into multi-case contracts with Magna in the first place.  (Doc. 15 ¶ 51.)  At the pleading stage, the Court must accept these allegations as true and construe them in Magna's favor.  In that light, Magna has met its burden of alleging that there is a line of causation between the Regulations and its alleged harm.

Finally, because Magna has alleged that enjoining the State from enforcing the Regulations will redress their alleged injury, it has satisfied the third standing requirement.  As a result, Magna has met its burden of establishing all three of the required elements of standing at the pleading stage.  The State's Motion to Dismiss Magna's Complaint for lack of standing will therefore be denied.

## III.   Rule 12(b)(6) Motion to Dismiss Count I for Failure to State a Claim

In the alternative, the State moves to dismiss Count One, in which Magna claims

that the Regulations violate the Commerce Clause of the United States Constitution, for failure to state a claim upon which relief could be granted.

### A.    Legal Standard

To state a claim for relief under Fed. R. Civ. P. 8(a), a plaintiff must make "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  This "short and plain statement" must also be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.  A claim is plausible if it contains "[f]actual allegations [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and to permit a reasonable inference that the defendant is liable for the conduct alleged, *Iqbal*, 556 U.S. at 678.  In evaluating a motion to dismiss, the Court accepts all of Plaintiffs' plausible factual allegations as true and construes the pleadings in a light most favorable to them.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  The principle that a court accepts as true all of the allegations in a complaint does not, however, apply to legal conclusions or conclusory factual allegations.  *Iqbal*, 566 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  Rather, the plaintiff must at least "allege sufficient facts to state the elements of [the relevant] claim."  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

### B.    Analysis

The Commerce Clause provides that "Congress shall have Power . . . [t]o regulate Commerce with foreign Nations, and among the several States."  U.S. Const., Art. I, § 8, cl. 3.  Although the plain text of the Constitution does not limit the power of States to regulate commerce, the Supreme Court has consistently interpreted the Commerce Clause

to have an implicit restraint on state authority. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007) (citations omitted). This negative aspect of the Commerce Clause has developed into a doctrine known as the "dormant" Commerce Clause. *Id.* The dormant Commerce Clause is implicated only when "state laws regulate an activity that has a substantial effect on interstate commerce such that Congress could regulate the activity." *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 524 (9th Cir. 2009). Because of the difficulty of striking the optimal balance between the competing interests of legitimate local interests and preservation of national markets, courts undertaking a dormant Commerce Clause inquiry should "eschew[] formalism for a sensitive, case-by-case analysis of purposes and effects." *W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 201 (1994).

### 1.     Substantial Burden on Interstate Commerce

In order to determine whether Magna can state a claim for a violation of the dormant Commerce Clause, the Court must first determine whether it has alleged that there is "a *substantial burden* on *interstate commerce*." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) (*Harris*). Magna argues that it has alleged that the Regulations substantially burden interstate commerce through a litany of interstate effects. Those alleged effects include: (1) preventing Magna from entering into multi-case contracts with Arizona clients; (2) preventing Magna from providing services in Arizona for its clients with whom Magna already has multi-case contracts; (3) affects the Magna's ability to perform back-end court reporting services out of state; and (4) raising prices for court reporting services outside of Arizona in all cases.

To determine whether the Regulations implicate the Commerce Clause, the Court must determine whether the Regulations impact "the interstate flow of goods." *Harris*, 682 F.3d at 1153. The State contends that Magna's dormant Commerce Clause claim should be dismissed because Magna has not alleged that the Regulations impose a substantial burden on the interstate flow of goods. For the purposes of this Motion, the Court must accept as true all of the factual allegations Magna asserts to support its claim.

1   Magna has alleged that the Regulations eliminate its ability to work with Arizona court
2   reporters to transmit drafts transcripts out of state for back-end services in Magna's
3   Philadelphia hub.  Magna has also alleged that the Regulations result in price increases
4   for court reporting services both in Arizona and nationwide.  Magna alleges that these
5   added costs result at least in part from limiting court reporters' ability to send transcripts
6   out of state for back-end services.  Taking those allegations as true and construing them
7   in Magna's favor, those allegations are sufficient to allege a substantial burden on the
8   flow of court reporting goods and services across state lines.  The Regulations may not,
9   in fact, impose a substantial burden on interstate commerce after evidence of the effects
10  of Arizona's specific regulations is presented, but those facts are not before the Court on
11  this Motion.  As a result, at the pleading stage, Magna has alleged sufficient facts for the
12  dormant Commerce Clause to apply to its claims.

### 2.      Discriminatory Purpose

14          Once the dormant Commerce Clause applies, to determine whether a state law
15  violates it courts must first evaluate whether the law "discriminates on its face against
16  interstate commerce."   *United Haulers*, 550 U.S. at 338 (citing *American Trucking*
17  *Assns., Inc. v. Michigan Pub. Serv. Comm'n*, 545 U.S. 429, 433 (2005)).  If a state law
18  discriminates against interstate commerce on its face, it is subject to strict scrutiny.
19  *Brown*, 567 F.3d at 524.  Magna does not contend that the Regulations discriminate
20  against interstate commerce on their face, so the Court need not evaluate the Regulations
21  under strict scrutiny.

### 3.      *Pike* Balancing Test

23          A non-discriminatory state law may still violate the dormant Commerce Clause,
24  however, even when it is "a law directed to legitimate local concerns, with effects upon
25  interstate commerce that are only incidental."  *City of Philadelphia v. New Jersey*, 437
26  U.S. 617, 624 (1978).  In that case, a law that incidentally affects interstate commerce
27  will be upheld "unless the burden imposed on such commerce is clearly excessive in
28  relation to the putative local benefits."  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142

1   (1970).  This test, known as the *Pike* test, is a balancing test in which "the extent of the

2   burden [on interstate commerce] that will be tolerated will of course depend on the nature

3   of the local interest involved, and on whether it could be promoted as well with a lesser

4   impact on interstate activities."  *Id*.  In other words, once a legitimate local purpose for a

5   state law is identified, "then the question becomes one of degree."  *Id*.  The plaintiff in a

6   dormant Commerce Clause challenge "bears the burden of proof in establishing the

7   excessive burden in relation to the local benefits."  *Nat'l Ass'n of Optometrists &*

8   *Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 524 (9th Cir. 2009).

9          There are weighty local interests the Regulations are meant to serve, all centered

10   on ensuring the prompt, effective, and impartial operation of the judicial system through

11   court reporting services that are critical to that system.  In order to state a claim upon

12   which relief can be granted under the dormant Commerce Clause, Magna must allege

13   facts sufficient to claim plausibly that the Regulations impose a burden on interstate

14   commerce that is excessive in relation to those local benefits of the Regulations.

15   Whether Magna has done so is a close question, because the intended benefits of the

16   Regulations are plainly strong.   But the dormant Commerce Clause analysis involves a

17   case-by-case analysis of purposes and effects.   Magna has alleged that the intended

18   benefits of the Regulations are illusory and that the sole purpose behind them is

19   anticompetitive animus.  (Doc. 15 ¶66-90.)  The Court has serious doubts about the

20   credibility of those allegations, and would have been assisted in evaluating them by a

21   Reply from the State.  Lacking contrary assertions, however, those allegations are just

22   sufficient to raise Magna's right to relief above the speculative level.   A more searching

23   application of the *Pike* balancing test in this case would necessarily involve weighing of

24   facts involving the purposes of the Regulations, the burden on interstate commerce they

25   in fact create, if any, and whether other less burdensome alternatives were available.

26   That balancing will be more finely calibrated once the Court has had the opportunity to

27   consider actual evidence.  The State's Motion to Dismiss Count I for failure to state a

28   claim will therefore be denied.

### 4.    Zone of Interests

Finally, the State contends that Count I should be dismissed because it does not concern interstate commerce, such that it falls outside of the zone of interests to be protected by the dormant Commerce Clause.  According to the State, the Regulations concern only intrastate commerce within Arizona, because they regulate only Arizona-licensed court reporters, proceedings within Arizona, and transcripts produced for use in courts within Arizona.  The State therefore argues that the Regulations affect only an intrastate market for legal transcription, and do not affect the ability of court reporters to sell or ship transcripts outside of Arizona.  From this, the State urges the Court to "decline to expand the zone of interests protected by the Clause to purely intrastate disputes."  *City of Los Angeles v. County of Kern*, 581 F.3d 841, 848 (9th Cir. 2009).

Magna has alleged, however, that the Regulations do prevent court reporters in Arizona from sending draft transcripts out of state for back-end services.  Magna has also alleged that the Regulations have a variety of interstate effects discussed above.  Those allegations are sufficient to bring this dispute outside of the purely intrastate dispute discussed in *City of Los Angeles*.  Because Magna has alleged that the Regulations both hamper Arizona court reporters' ability to ship draft transcripts out of state, and prevents Magna from sending finalized transcripts back into Arizona, in addition to a variety of other interstate effects, its claims are within the zone of interests protected by the dormant Commerce Clause.  The State's Motions will therefore be denied.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Amended Complaint (Doc. 18) is denied.

Dated this 21st day of August, 2013.

Neil V. Wake
United States District Judge

- 11 -